UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

|  |  |
|---|---|
| GLORIA CELESTE YOUNG, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. ___2:23-cv-175-KS-MTP___ |
| v. | CLASS ACTION COMPLAINT |
| STATE FARM FIRE AND CASUALTY COMPANY, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff, Gloria Celeste Young, individually and on behalf of all others similarly situated, states and alleges the following for her Complaint against State Farm Fire and Casualty Company:

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

1.     Plaintiff Gloria Celeste Young is a citizen and resident of Hattiesburg, Mississippi. At all times relevant hereto, Plaintiff owned and resided in the dwelling located at 112 Elias Whiddon Road, Hattiesburg, Lamar County, Mississippi (the "Insured Premises").

2.     Defendant State Farm Fire and Casualty Company ("State Farm") is a corporation organized under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois. State Farm is authorized to sell homeowner and property insurance policies in the State of Mississippi and is engaged in the insurance business in the State of Mississippi.

3.     For purposes of venue, the events giving rise to the individual and class claims that are the subject of this action occurred in whole or in part in this district.

4.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

5.      This Court has personal jurisdiction, both general and specific, over State Farm.

## FACTS

### A.      The Property Insurance Policy and Casualty Loss

6.      At all times relevant hereto, Plaintiff was the "Insured" pursuant to an insurance contract whereby State Farm agreed to insure the residential buildings located on the Insured Premises against property damage, bearing Policy No. 24-BB-R009-4 (the "Policy"). As relevant hereto, the term of the Policy was March 20, 2022 to March 20, 2023.

7.      A copy of the Policy is attached hereto as Exhibit 1.

8.      The Policy provided insurance coverage for accidental direct physical loss to the dwelling located on the Insured Premises, except as specifically excluded or limited by the Policy. A copy of State Farm's policy renewal notice and policy coverage declarations for the relevant policy period is attached hereto as Exhibit 2.

9.      This lawsuit only concerns property insurance coverage for buildings, and not personal contents, such as clothes and furniture. The Policy provides $306,000.00 in property coverage for the primary dwelling. *See* Ex. 2 at 4. The dwelling property coverage under the policy is referred to herein as "A1 coverage."

10.      Pursuant to the Policy, Plaintiff paid State Farm an annual premium in exchange for insurance coverage. The required premiums were timely paid at all times relevant to this Complaint.

11.      On January 21, 2023, during the term of the Policy, Plaintiff's dwelling located on the Insured Premises suffered a casualty loss due to fire (the "Loss").

12.      The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

13.     Plaintiff promptly notified State Farm of the Loss on or about January 21, 2023 and promptly made a claim against the Policy.

14.     After the Loss was reported to State Farm, State Farm sent an adjuster to inspect and adjust the Loss on or about January 27, 2023. State Farm subsequently inspected the premises again on April 28, 2023.

15.     After its inspection, State Farm determined that the Loss was covered by the terms of the Policy.

16.     State Farm calculated its actual cash value ("ACV") payment obligation to Plaintiff by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

17.     The Policy does not define RCV or ACV.

### B.     State Farm Manipulation of Xactimate

18.     Xactimate is a software program used to adjust property loss claims. It is a cloud-based and ready to use online program. State Farm utilizes Xactimate's software system to calculate repair and construction costs for residential loss claims. Xactimate is owned by Insurance Services Offices ("ISO"), a member of the Verisk Analytics family of companies.

19.     Xactimate utilizes price lists and labor efficiencies which are periodically updated within the software. The price lists and/or labor efficiencies are specific to the general geographic location of the loss. The applicable price list is defined by the metropolitan area closest to the loss. By way of example, Mrs. Young's home is located outside the city limits of Hattiesburg, Mississippi in rural Lamar County. However, the price list applicable to Ms. Young's claim is that of the greater Hattiesburg area.

3

20.     Xactimate updates its price lists monthly to account for market changes in the construction/remediation industry including availability of materials, supply and demand, availability and cost of labor, and changes within the economy as a whole.

21.     Xactimate is widely used in the insurance industry to calculate repair costs for residential property loss claims. Insurance companies including Defendant State Farm, and construction companies use Xactimate's products to handle more than half of all property claims in the United States. Today, 23 of the top 25 property insurance companies in the U.S. use Xactimate property insurance claims tools

22.     In adjusting Plaintiff's claim, State Farm affirmatively and unilaterally chose to utilize the "New Construction Labor Efficiency" setting (herein, "New Construction") within the software. This selection reduced the benefits to be paid by altering and suppressing the allowable labor and material costs necessary to remediate the loss. The new construction setting, as opposed to "Restoration/Service/Remodel Labor Efficiency" (herein, "Restoration and Remodel"), reduces the allowable labor and/or material charges for a specific task entry.

23.     Restoration and remodel is the default setting within Xactimate's software. Utilizing the new construction requires an intentional selection of the setting. Changing the setting from restoration and remodel to new construction is done by simply toggling a setting in Xactimate's online platform. State Farm's use of the new construction setting is an intentional manipulation of the software contrary to insurance industry standards and the software guidelines provided by Xactimate.

24.     In adjusting Plaintiff's claims, State Farm calculated the loss in Xactimate using the new construction setting:

# Price List:    MSHA28_JAN23
## New Construction

On information and belief, MSHA28 corresponds to the geographic location. Likewise, JAN23 defines the price list, specific to the month of the loss. Lastly, New Construction is the labor efficiency setting. Each entry within State Farm's estimate was specific to market conditions within the Hattiesburg, MS geographic area, during the month of January 2023, but based on the "new construction" labor efficiency.

25.     An estimate within the Xactimate software contains hundreds, if not thousands, of individual line-item entries. For example, State Farm's estimate includes the following entry:

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **Wall Framing** | | | | | | | |
| 1. 2" x 4" x 10' #2 & better Fir / Larch (material only) | | | | | | | |
| 6.00 EA | 4.54 | 1.91 | 5.82 | 34.97 | 33/150 yrs Avg. | (7.69) 22.00% | 27.28 |

Of note, the above entry for lumber was for material only and does not include a correlating labor charge for the entry. Accordingly, this entry was subject to a calculated depreciation percentage. Other State Farm entries, however, are task based and include amounts for both materials and labor in a single entry without further delineation or description.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Rough Electrical** | | | | | | | |
| 9. Rewire\wire - avg. residence - boxes & wiring | | | | | | | |
| 1,882.53 SF | 2.70 | 426.96 | 1,016.56 | 6,526.35 | 33/100 yrs Avg. | (2,153.68) 33.00% | 4,372.67 |

This entry includes a unit price of $2.70/sq. ft. that after accounting for taxes, general contractor overhead and profit (GCO&P), age/life condition, and depreciation has an actual cash value (ACV) of $4,372.67 and a replacement cost value (RCV) of $6,526.35.

5

26.     The same entry entered under the restoration and remodel labor efficiency reaches a different valuation altogether. As seen below, the same task, for the same area of the home has a different unit price associated with it.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 553. Rewire\wire - avg. residence - boxes & wiring | 1,882.53 SF | | 0.00 | 3.35 | 529.74 | 1,261.30 | 8,097.52 |

The only difference between the entry above and that from State Farm is the labor efficiency setting.[1] The $0.65/sq. ft. difference in the unit price between these two entries can be explained only by utilizing different labor efficiency settings.

27.     In the context of insurance claim estimating, labor efficiency relates to the amount or intensity of labor necessary to perform the related task. In a restoration and remodel project, a given task requires additional steps not found in a new construction project. This results in a higher labor cost in the restoration and remodel setting.

28.     Xactimate describes new construction as follows:

The New Construction option provides a cost for each line item based upon the most efficient labor productivity available. **This option is intended to be used for true new construction applications or for jobs in which a total "ground-up" rebuild is necessary**. Additionally, it is possible that some portions of a large partial loss may be addressed using this efficiency setting. For example, as the rebuild process progresses, it is possible that a certain phase may be reached in which the remaining portions of the repair are more in line with a new construction scenario.

Exhibit 3, Xactware White Paper "Labor Efficiencies Design" at p. 2 (emphasis added).

29.     Xactimate describes Restoration/Service/Remodel as follows:

The Restoration/Service/Remodel option is for **jobs other than total losses or new construction.** When selected, this option provides a cost for each line item based upon a labor productivity that includes such things as drive time, mobilization costs, material delivery, and the **overall reduction in productivity that occurs when repair professionals address the complex issues found in restoration and remodeling jobs (for example, matching drywall texture or working in an occupied home)**.

---

[1] The referenced entry does not account for depreciation.

*Id*. (emphasis added).

30.    Xactimate explains the impact these two settings have on pricing as follows:

In fact, the supporting events, from a labor perspective, are the only factors that create the differences between the "new construction" and "restoration" pricing published by Xactware. **The difference occurs when the restoration supporting events take into account an additional amount of time for "working in a restoration environment."** This includes factors such as having to set up the work or cutting area outside the structure, working and being cautious around contents, etc.

Exhibit 4, Xactware White Paper "Labor Productivity in Xactimate Pricing" at p. 4. The foregoing highlights the reality that Restoration and Remodeling projects are inherently more labor intensive and therefore, less efficient than a new construction project.

31.    The January 21, 2023, fire resulted in extensive damage to Plaintiff's property. Plaintiff's home was practically destroyed in the loss. The loss, however, did not result in a complete "ground-up rebuild" as described by Xactimate in "Labor Efficiencies Design." *See* Ex. 3, at 2.

32.    The loss left intact the structural components of the insured dwelling with extensive interior damage. Repairs to the existing structure of the dwelling inherently demand "working in a restoration environment." *See* Ex. 4, at p. 4.

33.    State Farm did not conduct an appraisal of the market value of any portion of Plaintiff's property.

34.    State Farm has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the methodology actually used by State Farm.

35.    State Farm sent Plaintiff an "Estimate" reflecting its ACV calculations, a copy of which is attached as Exhibit 5. State Farm calculated the RCV of Plaintiff's damaged property at $254,656.75. *See* Ex. 5, at p. 3.

36.     State Farm calculated the depreciation for Plaintiff's damaged property in the amount of $86,538.39. *See* Ex. 5, at p. 3.

37.     After subtraction of the depreciation from the RCV, and also subtraction of the applicable deductible of $1,530.00, State Farm paid Plaintiff an ACV payment of $149,279.53. *Id*.

38.     Included with the Estimate provided to Plaintiff by State Farm was a "Building Estimate Summary Guide," in which State Farm provided the following definitions of RCV, depreciation, and ACV:

> Replacement Cost Value (RCV) – Estimated cost to repair or replace damaged property.
>
> Depreciation – The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.
>
> Net Actual Cash Value Payment (ACV) – The repair or replacement cost of the damaged part of the property less depreciation and deductible.

39.     Plaintiff was underpaid on her ACV claim as described below.

### i.     State Farm's Practice of Utilizing New Construction Pricing

40.     State Farm's policy provides for payment of "actual cash value of the damaged part of the property."

41.     State Farm's policy does not define ACV.

42.     State Farm's policy does not define "the damaged part of the property."

43.     State Farm's practice of calculating ACV by using the new construction setting for claims where there has been a loss where additional labor and/or material costs, as set forth herein are necessary, are not included, but rather artificially and improperly excluded from the ACV calculation, is a breach of State Farm's policy.

44.     The ACV payment State Farm made to Plaintiff deducted costs without such practice being clearly and unambiguously explained in State Farm's policy or in its written estimate.

45.     State Farm's hidden deduction of costs associated with the repair or replacement of Plaintiff's property resulted in Plaintiff receiving payment for the loss in an amount less than Plaintiff was entitled to receive under the Policy. State Farm breached its obligations under the Policy by improperly reducing and/or excluding the necessary cost of labor.

46.     The estimate State Farm provided to Plaintiff does not disclose State Farm's use of the incorrect labor efficiency or the resulting deduction in the estimate it created.

47.     Attached hereto as Exhibit 6 is a reconstructed estimate based entirely on State Farm's submitted estimate (Exhibit 5). Exhibit 6 reflects each individual entry made by State Farm utilizing the same scope, square footage, and material but created using the "Restoration/Service/Remodel" labor efficiency setting. The only difference between Exhibit 5 and 6 is the labor efficiency setting implemented within the Xactimate software.

48.     Exhibit 6 reflects a RCV of the claim of $306,521.62. *See* Ex. 6, at p. 36.

49.     State Farm's intentional selection of the new construction labor efficiency wrongfully suppressed the replacement cost value of Plaintiff's claim by $51,864.87. But for State Farm's use of the new construction labor efficiency, the loss would have qualified as a "total loss" under the applicable limits of the Policy.

50.     State Farm's initial inspection of the property and the resulting Estimate do not reflect the true scope of the loss. Plaintiff's retained construction contractor prepared two complete estimates, one for reconstruction costs, and the other for necessary remediation and mitigation work. Copies of those estimates are attached as Exhibits 7 and 8, respectively. Exhibit 7 values the

RCV of the construction as $387,967.79. Exhibit 8 values the RCV of the remediation and mitigation work at $60,391.71. The Estimates' combined value of the loss is $448,359.50.

51.    State Farm's inspection and estimate were intentionally incomplete and did not accurately reflect the scope of the loss and omits material items and associated labor charges, necessary to repair the insured dwelling. *See* Ex.  5. On information and belief, State Farm prepared an initial estimate utilizing the Restoration/Service/Remodel labor efficiency which reflected the policy limits of the A1 coverage ($306,000). As stated, State Farm's estimate would have resulted in a RCV of $306,521.62 but for the selection of the new construction setting. On information and belief, State Farm then knowingly and intentionally chose to use the new construction setting, resulting in the $51,864.87 suppression in RCV. *See* Ex. 5.

52.    State Farm's practice of deducting repair and replacement costs is inconsistent with the universally accepted premise that the fundamental purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss—no better and no worse. A policy, like State Farm's policy, that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of an ACV payment is to make the insured whole after the loss that occurred.

53.    While an insurer may lawfully calculate costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully deduct repair and replacement benefits. State Farm's failure to pay the full cost of the work necessary to return Plaintiff back to her pre-loss condition left Plaintiff under-indemnified and underpaid for the Loss.

54.    State Farm materially breached its duty to indemnify Plaintiff by deducting repair and replacement costs associated with Plaintiff's property in its ACV payment, thereby paying Plaintiff less than she was entitled to receive under the terms of the Policy.

C.    Concealment

55.    At all times relevant hereto, State Farm was under an affirmative duty to disclose the manner in which it calculates ACV payments to policyholders.

56.    To conceal its practice of deducting repair and replacement costs from policyholders, State Farm did not disclose the practice in either its policies or the loss estimates provided to its insureds. State Farm also did not separate the amounts it deducted in the estimates provided to insureds with their ACV payments.

57.    The commercial estimating software used by State Farm easily permits identification of deductions or adjustments so policyholders can determine how ACV is being calculated. State Farm did not provide this information to claimants making it impossible for an ordinary consumer to know that State Farm was manipulating the repair and replacement costs, when reviewing estimates provided to policyholders.

58.    State Farm was in a superior position over policyholders to know that it was deducting repair and replacement costs through its estimating software. State Farm controlled the settings for the software, which expressly permit an adjuster to simply choose new construction pricing instead of repair and replacement pricing.

59.    State Farm fraudulently concealed its breaches of contract from Plaintiff and similarly situated policyholders.

60.    The facts misrepresented, concealed, or otherwise not disclosed to Plaintiff and similarly situated policyholders were material facts that a reasonable person would have considered important in deciding whether to accept ACV payments from State Farm.

61.    The concealment of information was performed by State Farm with the intent that policyholders, including Plaintiff, believe that ACV was being paid so as to include all necessary

and owed repair and replacement costs, not costs based on new construction, which are significantly lower.

## AMOUNT IN CONTROVERSY

62.    The amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

### A.    Damages and Injunctive Relief Class

63.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a national class action, or alternatively as a Mississippi class, on behalf of herself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the class is ascertainable.

64.    The proposed class that Plaintiff seeks to represent is defined as follows:

All persons and legal entities insured under a State Farm homeowner or property policy who submitted a claim for partial structural damage and which were not designated a "total loss" whose ACV and RCV payments were calculated by application of "New Construction" labor efficiency setting in Xactimate from November 10, 2020, to the date of trial, inclusive.

Excluded from the class are members of the Court and Plaintiff's counsel, as well as any policyholder who received the full limits of applicable coverage without having been to appraisal or whose claim is the subject of an individual lawsuit.

65.    Plaintiff reserves the right to amend the definition of the proposed class. The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

66.    Members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the

policy. Certain amounts initially withheld as depreciated labor may be later repaid to policyholders upon further adjustment of the claim. However, policyholders who have been subsequently repaid for amounts initially withheld for repair and replacement costs by use of the new construction setting in Xactimate still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, i.e., interest, which State Farm kept for its own and profited from.

67.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that thousands of people geographically dispersed have been damaged by State Farm's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by State Farm or from information readily available to State Farm.

68.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

69.     State Farm has acted on grounds generally applicable to the proposed class in that State Farm has routinely deducted repair and replacement costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that State Farm will continue to use this practice to reduce the amount it pays to its insureds under these policies absent a decision by the Court.

70.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

> a.   Whether State Farm's policy language allows State Farm to deduct repair and replacement costs in its calculation of ACV payments by applying "new construction" settings to claims;

b.  Whether State Farm's policy language is ambiguous concerning the deduction of repair and replacement costs in calculating ACV payments, and, if so, how State Farm's insurance policies should be interpreted;

c.  Whether State Farm's deduction of repair and replacement costs in its calculation of ACV payments breaches the insurance contract;

d.  Whether State Farm has a custom and practice of deducting repair and replacement costs in its calculation of ACV payments;

e.  Whether Plaintiff and members of the proposed class have been damaged as a result of State Farm's deduction of repair and replacement costs in its calculation of ACV payments;

f.  Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act;

g.  Whether Plaintiff and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitution damages;

h.  Whether Plaintiff and members of the proposed class are entitled to punitive damages; and

i.  Whether Plaintiff and members of the proposed class are entitled to attorney's fees and intermediate damages.

71.  Plaintiff's claims are typical of the claims of all proposed class members, as they are all similarly affected by State Farm's custom and practice concerning deduction of repair and replacement costs. Further, Plaintiff's claims are typical of the claims of all proposed class members because her claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

72.  Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seek to represent. Plaintiff has retained counsel who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff

and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

73.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

74.    In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

75.    Questions of law or fact common to Plaintiff and the proposed class members, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals

would require. Further, the monetary amounts due to many individual proposed class members are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual proposed class members to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by State Farm's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

76.    Class certification is further warranted because State Farm has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

<b>B.    Mississippi Issues Class</b>

77.    Plaintiff seeks, in the alternative or prior to certification of a national or a Mississippi Damages and Injunctive Relief Class, a Mississippi Issues Class.

78.    Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

79.    In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiff brings this action on behalf of herself and of all others similarly situated to resolve, inter alia, several important issues:

a.    Whether State Farm's policy language allows State Farm to deduct repair and replacement costs in its calculation of ACV payments by applying "new construction" settings to claims;

b.    Whether State Farm's policy is ambiguous concerning the deduction of repair and replacement costs by applying "new construction" settings in calculating ACV payments;

c.    Whether State Farm's deduction of repair and replacement costs in the manner described herein in its calculation of ACV payments breaches the insurance policies;

16

    d.   Whether State Farm has a custom and practice of deducting repair and replacement costs in its calculation of ACV payments in the manner described herein;

    e.   Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act; and

    f.   Whether any of State Farm's potential affirmative defenses apply in whole or in part.

80.    The Issues Class would be "carved at the joints" after disposition of the preliminary questions concerning State Farm's liability for breaching its contractual duty to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully deducting repair and replacement costs. The individual class members would then be able to rely upon the preclusive effect of the determination that State Farm's custom and practice of deducting repair and replacement costs in calculating ACV payments is unlawful to then individually litigate specific issues such as damages. Alternatively, the Court could thereafter certify a Mississippi Damages and Injunctive Relief Class.

81.    The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

82.    Individual joinder of the members of the Issues Class would be wholly impracticable. As previously stated, Plaintiff reasonably believes that thousands of people geographically dispersed across Mississippi have been damaged by State Farm's conduct as described herein. Thus, the numerosity element for class certification is met.

83.    Questions of law and fact are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition common questions of law applicable to all class members.

84.    Plaintiff's claims are typical of the Issues Class because her claims arise from the same course of conduct by State Farm, i.e., its uniform custom and practice of deducting repair and replacement costs in calculating ACV payments to its Mississippi policyholders and are based on the same factual and legal theories. Plaintiff's claims are, therefore, typical of the Issues Class.

85.    Plaintiff will fairly and adequately represent and protect the interests of the Issues Class. Her interest in vindicating these claims is shared with all members of the Issues Class and there are no conflicts between the named Plaintiff and the putative class members. In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

86.    The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior. Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual class members. Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated policyholders to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## COUNT I

## BREACH OF CONTRACT

87.    Plaintiff restates and incorporates by reference all preceding allegations.

88.    State Farm entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between State Farm, Plaintiff and members of the proposed class, as well as the manner in which claims for covered losses are handled.

89.    The policies of insurance between State Farm and Plaintiff and the other proposed class members are binding contracts under Mississippi law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

90.    State Farm drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

91.    In order to receive ACV claim payments, Plaintiff complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

92.    The policies of insurance State Farm issued to Plaintiff and members of the proposed class state that, in the event of a partial loss, State Farm may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, State Farm's custom and practice has been, and is, to make such payments based upon State Farm's calculation of the ACV for the partial loss, less any applicable deductible.

93.    State Farm breached its contractual duty to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully deducting repair and replacement costs.

94.    State Farm's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefited and continues to benefit State Farm. Likewise, State Farm's actions damaged and continues to damage Plaintiff and members of the proposed class.

95. Additionally, State Farm breached the Policy by failing and refusing to promptly pay the amounts individually owed to Plaintiff as required by the terms of the Policy. As a result, Plaintiff has been damaged in the amount of the unpaid portion of her claim, including but not limited to the replacement cost of the damage to her dwelling.

96. State Farm's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

97. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts State Farm unlawfully withheld from their ACV payments as labor cost depreciation.

98. Plaintiff and members of the proposed class seek any and all relief as may be permitted under Mississippi law to remedy the ongoing breaches of contract.

<u>**COUNT II**</u>

<u>**NEGLIGENCE AND/OR GROSS NEGLIGENCE**</u>

99. Plaintiff restates and incorporates by reference all preceding allegations.

100. State Farm had a duty under Mississippi law and pursuant to the Policy to fully, fairly, adequately and correctly investigate and adjust Plaintiff's loss and claim.

101. State Farm breached that duty in the following non-exclusive particulars:

a. By failing to conduct a reasonable and lawful adjustment of Plaintiff's and the proposed class members' claims;

b. By refusing to fully pay Plaintiff's and the proposed class members' actual cash value claim without conducting a complete, adequate, full, and fair investigation and adjustment of Plaintiff's claim for damage under the Policy;

c. By failing to fully and appropriately pay Plaintiff and the proposed class members for their loss;

d. By arbitrarily deducting repair and replacement costs as described herein on Plaintiff's and the proposed class members' claims contrary to the policy and the law;

e. By failing to acknowledge and pay the true actual cash value of Plaintiff's and the proposed class members' insured losses;

f. By interpreting the Policy in an arbitrary and capricious manner, and contrary to the plain meaning and intent of the Policy in an effort to avoid, and intentionally withhold, payment for the full extent of the Loss; and

g. By other acts and omissions to be proven at trial.

102.    Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiff's and the proposed class members' rights as insureds.

103.    State Farm's negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiff and the proposed class members economic damages, including attorney's fees and litigation expenses.

## COUNT III – BAD FAITH

104.    Plaintiff restates and incorporates by reference all preceding allegations.

105.    State Farm had a duty to exercise good faith in dealing with Plaintiff and the proposed class members. State Farm's failure and refusal to pay the amounts contractually owed to Plaintiff and the proposed class members was arbitrary and capricious and constitutes bad faith. State Farm's actions constitute the independent tort of bad faith refusal to pay an insurance claim in that State Farm failed to properly adjust and fully pay covered insurance claims without legitimate or arguable reason for doing so.

106.    The bad faith of State Farm is evidenced by the fact that, at all times hereto, State Farm knew, or reasonably should have known, that Plaintiff and the proposed class members were justifiably relying on the money and benefits due them under the terms of the policy and the law, as well as the actions of State Farm as set forth in the paragraphs above and below. Nevertheless, acting with conscious disregard for Plaintiff and the proposed class members' rights and with the intention of causing or willfully disregarding the probability of causing unjust hardship on Plaintiff

and the proposed class members, State Farm intentionally and willfully refused to fully pay Plaintiff and the proposed class members' valid claims and withheld monies and benefits rightfully due them. State Farm was obligated to fully pay Plaintiff and the proposed class members for their damages associated with the admittedly covered loss but failed to do so. State Farm lacked an arguable or legitimate basis in law and fact for its refusal and failure to fully pay Plaintiff and the proposed class members for their losses, and State Farm knew there was no arguable, legitimate, or justifiable basis for its refusal and failure to fully pay Plaintiff and the proposed class members for their losses. Further, State Farm acted with malice and/or gross negligence/reckless disregard to Plaintiff and the proposed class members' rights under the Policy and existing law and profited from the aforesaid conduct to the detriment of Plaintiff and the proposed class members.

107.    At all material times, State Farm owed to Plaintiff and the proposed class members as policyholders, claimants and insureds under the Policy, a non-delegable, express, and implied duty, to at all times and in all things, act in good faith and with fair dealing toward Plaintiff and the proposed class members. Along with the duty of good faith and fair dealing, State Farm owed at all times a duty to: (1) meet the reasonable expectations of Plaintiff as policyholder; (2) investigate and pay the claim with the interest of the insured in mind and keeping the insured informed every step of the way; (3) give as much if not greater consideration to the financial interests of the insured, than it gave to its own financial interests; and (4) perform a prompt and adequate investigation and make a reasonable, good faith payment based on that investigation.

108.    State Farm breached the aforementioned duties, including the overarching duty to exercise good faith and fair dealing with Plaintiff and the proposed class members as policyholders, claimants and insureds. State Farm's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following non-exclusive actions or

inactions by State Farm which were perpetuated with nefarious motives or with reckless indifference to the rights of Plaintiff and the proposed class members:

   a. State Farm's intentional or reckless failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff and the proposed class members' claims when liability and the amount owed was reasonably clear;

   b. State Farm's intentional or reckless refusal to pay the full value of Plaintiff and the proposed class members' claims and to otherwise honor its obligations under the Policy;

   c. State Farm's intentional refusal to fully and fairly investigate and pay the full value of Plaintiff and the proposed class members' claims;

   d. State Farm's intentional or reckless failure to properly adjust Plaintiff and the proposed class members' claims, and to pay Plaintiff and the proposed class members the full ACV amounts owed to them for their losses;

   e. State Farm's intentional or reckless failure to fully inform Plaintiff and the proposed class members of their rights under the subject insurance policy;

   f. State Farm's intentional or reckless concealment from Plaintiff and members of the proposed class of its practice of incorrectly depreciating labor costs for profit and against the interests of Plaintiff and the proposed class;

   g. State Farm's intentional or reckless failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

   h. State Farm's offering of substantially less than the amount actually owed in an effort to increase profits and deprive Plaintiff and the proposed class members of their rights under the Policy;

   i. State Farm's intentional or reckless denial of full and appropriate ACV payment of Plaintiff and the proposed class members' claims with no honest disagreement or innocent mistake concerning the validity or the nature and amount of their claims; and

   j. Other acts and omissions to be proven at trial.

109.    State Farm's actions and omissions as set forth herein are the direct and proximate cause of actual damages sustained by Plaintiff and the members of the proposed class.

110.    State Farm knew, or reasonably should have known, that Plaintiff and the proposed class members were justifiably relying on the money and benefits due them under the terms of the

subject insurance policies. Nevertheless, acting with conscious disregard for the rights of Plaintiff and the proposed class members and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship, State Farm consciously refused to fully compensate Plaintiff and the proposed class members for their losses and withheld monies and benefits rightfully due Plaintiff and the proposed class members. In so acting, State Farm intended to and did injure Plaintiff and the proposed class members in order to protect its own financial interests.

111.    As a result of State Farm's breach of the duty to exercise good faith and fair dealing and bad faith denial of full and prompt payment as required by the law and the policy, Plaintiff is entitled to a judgment against State Farm for actual, compensatory, consequential, bad faith, and punitive damages, plus court costs, attorney's fees, and pre- and post-judgment interest at the legally allowable limit.

## COUNT IV

## DECLARATORY JUDGMENT AND RELIEF

112.    Plaintiff restates and incorporates by reference all preceding allegations.

113.    This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether or not further relief is or could be claimed.

114.    A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

115.    Plaintiff and members of the proposed class have complied with all relevant conditions precedent in their contracts.

24

116.    Plaintiff seeks, personally and on behalf of the proposed class, a declaration that State Farm's property insurance contracts prohibit the deduction of repair and replacement costs when adjusting losses under the methodology employed here.

117.    Plaintiff further seeks, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by State Farm in engaging in the conduct described herein, as may be permitted by law.

118.    Plaintiff and members of the proposed class have suffered injuries and damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff GLORIA CELESTE YOUNG, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action under Rule 23(a), (b)(2), (b)(3) and/or (c)(4), appointing Plaintiff as the representative of the class, and appointing David McMullan and Ned Nelson, as counsel for the class;

2. Enter a declaratory judgment, declaring that State Farm's practice of deduction of repair and replacement costs as described herein is contrary to and breaches the insurance policies issued to Plaintiff and members of the class;

3. Enter a preliminary and/or permanent injunction and equitable relief against State Farm and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4. Enter an order that State Farm specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages to Plaintiff for her individual claims for the amount she is owed pursuant to the Policy as a result of the Loss;

6.  Award compensatory damages for all sums depreciated as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the class;

7.  Award extra-contractual damages for State Farm's willful, wanton, reckless, grossly negligent, and bad faith conduct, which rose to the level of an independent tort;

8.  Award punitive and exemplary damages for State Farm's tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort;

9.  Award reasonable attorney's fees;

10. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the class;

11. Award pre- and post-judgment interest; and

12. Grant such further and additional relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 13, 2023

Respectfully submitted,

/s/ *David McMullan, Jr.*
David McMullan, Jr. (MSB #8494)
John W. ("Don") Barrett (MSB #2063)
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dmcmullan@barrettlawgroup.com
dbarrett@barrettlawgroup.com

*Counsel for Plaintiff*

*Co-Counsel for Plaintiff*

Mark A. Nelson (MSB #3808)
Ned A. Nelson (MSB #105712)
Nelson Law PLLC
7 Woodstone Plaza Ste. 7
Hattiesburg, MS 39402
mark@nelsonfirm.law
ned@nelsonfirm.law

Anthony Sakalarios (MSB #4615)
Chuck Blackwell (MSB #101990)
Sakalarios, Blackwell, Schock, PLLC
1817 Hardy St.
Hattiesburg, MS 39401
asakalarios@sbslawfirm.net
cblackwell@sbslawfirm.net

Nicholas A. Sakalarios (MSB #102062)
Attorney at Law
7 Woodstone Plaza Ste. 7
Hattiesburg, MS 39402
nick@sakalarioslaw.com

John M. Deakle (MSB #6003)
Ronald V. Johnson, IV (MSB #105950)
Russell L. Johnson (MSB # 105560)
Richard J. LaJaunie (MSB #100035)
Deakle-Johnson Law Firm, PLLC
802 Main St.
Hattiesburg, MS 39401
rjlajaunie@djlawms.com
jmd@deaklelawfirm.com
rvjohnson@djlawms.com
rljohnson@djlawms.com

Patrick W. Pendley (LA #10421)*
Pendley, Baudin & Coffin, LLP

P.O. Box 71
Plaquemine, LA 70765
pwpendley@pbclawfirm.com

Alvah H. Pasley (GA # 565839)*
D. Chad Nuce (GA # 547474)*
Pasley, Nuce, Mallory & Davis, LLC
300 W. Gordon St.
Thomaston, GA 30286
apasley@pnlawgroup.com
cnuce@pnlawgroup.com

J. Mark Deakle (ASB-8188-K64J)*
Jubal L. Hamil (ASB-2507-M66J)*
Deakle, Sholtis & Hamil, LLC
P.O. Box 1031
Mobile, AL 36633
mdeakle@dshfirm.com
jhamil@dshfirm.com

*To be admitted *Pro Hac Vice*