IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| GLORIA CELESTE YOUNG, | § | PLAINTIFF |
| ***Individually and on behalf of all*** | § | |
| ***others similarly situated*** | § | |
| | § | |
| | § | |
| v. | § | Civil No. 2:23-cv-175-HSO-MTP |
| | § | |
| | § | |
| STATE FARM FIRE AND | § | |
| CASUALTY COMPANY | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT STATE
FARM FIRE AND CASUALTY COMPANY'S MOTION [92] FOR JUDGMENT
ON THE PLEADINGS**

In this dispute over homeowner's insurance policy coverage, Defendant State

Farm Fire and Casualty Company ("Defendant" or "State Farm") seeks dismissal of

Plaintiff Gloria Celeste Young's ("Plaintiff" or "Young") claims for breach of

contract, negligence, and bad faith. *See* Mot. [92]; Am. Compl. [28]. Young has

agreed to and accepted an appraisal award, barring her claims for breach of

contract and negligence. And she has not alleged facts stating a plausible claim for

bad faith. Therefore, the Court finds that Defendant's Motion [92] for Judgment on

the Pleadings should be granted, and Plaintiff's claims should be dismissed with

prejudice.[1]

---

[1] Although Young brings her claims on behalf of a proposed class, a class has not been certified in
this case. Young is therefore the only plaintiff in this case; dismissal of her claims warrants
dismissal of the entire action. *See Cruson v. Jackson Nat. Life Ins. Co.*, 954 F.3d 240, 251 (5th Cir.
2020) (dismissing the "novel and surely erroneous argument that a nonnamed class member is a
party to the class-action litigation *before the class is certified*" (emphasis in original)).

# I.  BACKGROUND

A.    Factual Background

According to the Amended Complaint [28] in this case, Plaintiff owned a home in Hattiesburg, Mississippi (the "Insured Premises"), which was insured under a homeowner's insurance policy (the "Policy") issued by Defendant State Farm.  *See* Am. Compl. [28] at 1-2.  The Policy afforded coverage for accidental direct physical loss to the dwelling located on the Insured Premises, except as specifically excluded or limited by the terms of the Policy.  *Id.* at 2.

On January 21, 2023, during the term of the Policy, the Insured Premises suffered a casualty loss due to a fire, which "resulted in extensive damage to Plaintiff's property."  *Id.* at 3, 7.  Plaintiff asserts that her "home was practically destroyed in the loss."  *Id.* at 7.  After the fire, she notified State Farm of the loss and made a claim against the Policy.  *Id.* at 3.  State Farm sent an adjuster to inspect the premises and determined that the loss was covered.  *Id.* at 3.

The Policy required State Farm "pay the cost to repair or replace" the damaged part of the property subject to a two-step loss settlement process.  *See* Mem. [93] at 2; Ex. [28-1] at 21.  Before repairs were made, State Farm was required to pay the "actual cash value of the damaged property," Ex. [28-1] at 21, and then, after repairs were completed, to pay any "additional amount . . . actually and necessarily" spent on repairs to the damaged property (the "RC" or replacement cost payments), *id.*  The Policy states:

> a. ***We*** will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the ***Declarations***, the

damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, ***we*** will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less . . . .

*Id.* (emphasis in original).

The Policy defines actual cash value (the "ACV") as "the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." *Id.* at 4. And "all components of [the estimated cost to repair or replace]" are subject to depreciation. *Id.* But, according to State Farm, "the Policy does not prescribe a method for calculating 'the estimated cost to repair or replace' Plaintiff's damaged property (the first step of the ACV calculation), much less specify a particular estimating software that must be used." Mem. [93] at 3; *see also* Ex. [28-1] at 4 ("***actual cash value***" means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation").

The parties agree that to estimate the ACV of Plaintiff's home, "State Farm chose to use the Xactimate estimating software," which "allows estimators to input information gathered from an inspection of the damaged property" and which

3

"create[s] an estimate of the costs for the repairs using pricing lists specific to the general geographic location of the loss." *Id.* (quotations omitted); *see also* Am. Compl. [28] at 3 ("State Farm utilizes Xactimate's software system to calculate repair and construction costs for residential loss claims . . . . Xactimate utilizes price lists and labor efficiencies which are . . . specific to the general geographic location of the loss.").

Xactimate has two different "labor efficiency" settings that can be applied when estimating a loss: the "New Construction" setting ("NC LES") or the "Restoration/Service/Remodel" setting ("RSR LES"). Mem. [93] at 23; Am. Compl. [28] at 6-7. According to Plaintiff, "[i]n the context of insurance claim estimating, labor efficiency relates to the amount or intensity of labor necessary to perform the related task." Compl. [28] at 6. "In a restoration and remodel project, a given task requires additional steps not found in a new construction project, . . . [which] results in a higher labor cost in the restoration and remodel setting." *Id.* Xactimate describes the NC LES and RSR LES as follows:

> **New Construction**
> The New Construction option provides a cost for each line item based upon the most efficient labor productivity available. This option is intended to be used for true new construction applications or for jobs in which a total "ground-up" rebuild is necessary. Additionally, it is possible that some portions of a large partial loss may be addressed using this efficiency setting. For example, as the rebuild process progresses, it is possible that a certain phase may be reached in which the remaining portions of the repair are more in line with a new construction scenario.

> **Restoration/Service/Remodel**
> The Restoration/Service/Remodel option is for jobs other than total losses or new construction. When selected, this option provides a cost for each line item based upon a labor productivity that includes such things as drive time, mobilization costs, material delivery, and the overall reduction in productivity that occurs when repair professionals address the complex issues found in restoration and remodel jobs (for example, matching drywall texture or working in an occupied home).

Ex. [28-3] at 3.

In the course of adjusting Plaintiff's claim, State Farm's estimator employed the NC LES, or new construction model, which resulted in an estimated cost to repair Plaintiff's home of $254,656.75. Mem. [93] at 4; Ex. [28-5] at 3. After subtracting the deductible and depreciation, "State Farm paid Plaintiff an ACV payment of $149,279.53." Am. Compl. [28] at 8; Mem. [93] at 4. Plaintiff then retained her own estimator, who inspected the Insured Premises and came up with a rebuild estimate of $387,967.79, an amount which exceeded the applicable coverage limits. Mem. [102] at 2. This lawsuit followed.

B.    Procedural History

The Amended Complaint [28] essentially alleges that State Farm intentionally used the NC LES instead of the RSR LES in order to improperly reduce the value of Plaintiff's claim. Am. Compl. [28] at 4 ("This selection reduced the benefits to be paid by altering and suppressing the allowable labor and material costs necessary to remediate the loss."). She brings claims for: (1) breach of contract, because State Farm "unlawfully deduct[ed] repair and replacement costs"; (2) negligence and gross negligence for "failing to conduct a reasonable and lawful adjustment of Plaintiff's and the proposed class members' claims"; and (3) bad faith,

because State Farm's "failure and refusal to pay the amounts contractually owed" was "arbitrary and capricious." *Id.* at 19-24. Additionally, Plaintiff seeks "a declaration that State Farm's property insurance contracts prohibit the deduction of repair and replacement costs when adjusting losses" and "preclusion by State Farm in engaging in the conduct described[.]" *Id.* at 25.

In April 2024 State Farm filed a Motion [40] to compel appraisal and stay proceedings, which the Court granted. *See* Mot. [40]; Order [45]. At the conclusion of the appraisal process, on December 4, 2024, State Farm filed a Notice [54] of appraisal award, indicating that "the parties' appraisers agreed to an appraisal award of $329,616.98." Not. [54] at 1. State Farm then filed an amended Answer [66], along with a copy of the appraisal award (the "Appraisal Award") and State Farm's check paying the Award, which had been endorsed by Plaintiff. *See* Ex. [66-2] (endorsed Appraisal Award check). State Farm then filed the instant Motion [92] for Judgment on the Pleadings. *See* Mot. [92].

State Farm first argues that Plaintiff's breach of contract claim is barred by the appraisal award because it complied with the appraisal terms of the Policy, timely paid Plaintiff the amount it owed under the agreed Appraisal Award, and Plaintiff accepted that payment. *See* Mem. [93] at 8. Additionally, State Farm contends that Plaintiff's negligence claims fail as a matter of law because they merely restate her contractual claim. *See id.* at 9-10. Next, State Farm asserts that it has advanced an arguable basis for its original decision, and that Plaintiff has failed to plead facts indicating any willful or malicious conduct, such that any

6

claims for gross negligence or bad faith fail as a matter of law. *See id.* at 10-13. Finally, State Farm maintains that "[b]ecause Plaintiff's underlying substantive claims fail, there is no basis upon which she can seek the remedies of declaratory or injunctive relief . . . ." *Id.* at 14.

Plaintiff responds that her breach of contract claim is not barred by the Appraisal Award because "[t]he estimate underlying the appraisal award does not address the central question in this case: whether State Farm may permissibly apply new construction labor efficiency settings to reduce claims." Mem. [102] at 8. Regarding the Appraisal Award itself, Plaintiff asserts that "[t]he award did not address the Plaintiff's Option ID[2] coverage," meaning that her "breach of contract claim has not been fully compensated and there remains [sic] additional policy benefits to which [she] is entitled to recover." *Id.* at 11. Next, she argues that her claims for negligence survive because they are not duplicative of the breach of contract claims. *See id.* at 15-16. The claims for bad faith also survive because "State Farm's breach of contract was accomplished by the independent tortious act of manipulating the Xactimate software to suppress the estimated value of the actual and necessary cost of covered repairs," an act sufficient to justify punitive damages under Mississippi law. *Id.* at 19. Finally, Plaintiff posits that declaratory relief is appropriate because that "remedy is preserved for [her] to the extent the Court grants relief under the substantive laws of Mississippi." *Id.* at 27.

---

[2] In her Response [102], Plaintiff explains that she "purchased an additional endorsement for 'Option ID – Increase Dwelling' [sic] coverage up to $61,200." Mem. [102] at 1. Under this coverage, "State Farm is obligated to the Plaintiff for amounts over and above the Coverage A dwelling limits that are 'actually and necessarily spent' to repair the damaged dwelling." *Id.* at 2.

In Reply, State Farm reasserts that Plaintiff's contractual claims are barred because the "Appraisal Award was *agreed* by Plaintiff through her designated appraiser," and "[u]nder the express appraisal provision in Plaintiff's policy, this agreement is binding on Plaintiff." Mem. [106] at 8 (emphasis in original). Additionally, State Farm argues that the Appraisal Award does indeed answer Plaintiff's "central question" of whether State Farm correctly applied the NC LES, because Plaintiff agreed to an appraisal award which was "established, in part, *by using the NC LES.*" *Id.* at 9 n.6 (emphasis in original). With respect to Plaintiff's Option ID coverage, State Farm points out that this claim is "nowhere mentioned in her complaint," and that "a party cannot amend their complaint in a responsive brief." *Id.* at 14.

## II.  DISCUSSION

A.    Relevant Legal Standards

1.    Federal Rule of Civil Procedure 12(c)

A motion under Federal Rule of Civil Procedure 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (citation omitted). "In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (quotations and citations omitted).

To decide a Rule 12(c) motion, a court applies the same standard as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)). A claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant, *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014), a claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

2. <u>Relevant Mississippi Law</u>

Because subject-matter jurisdiction in this case is premised upon diversity of citizenship, the Court applies Mississippi substantive law. *See Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Mississippi, "insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Corban v. United Servs. Auto. Ass'n.*, 20 So. 3d 601, 609 (Miss. 2009) (quoting *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1164 (Miss. 2004)). If the language of an insurance policy is clear and unambiguous,

"then the language of the policy must be interpreted as written." *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1180 (Miss. 2014) (citing *Hankins v. Md. Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645, 652 (Miss. 2012)).

According to the Mississippi Supreme Court, "[w]hen an insured makes a claim against his policy, the insurer must perform a 'prompt and adequate investigation and make a reasonable, good faith decision based on that investigation.'" *United Servs. Auto. Ass. v. Estate of Sylvia F. Minor*, No. 2023-CA-49-SCT, 2024 WL 4985302, at *6 (Miss. Dec. 5, 2024) (quoting *Hoover v. United Servs. Auto Ass'n*, 125 So. 3d 636, 642 (Miss. 2013)). To prevail on a claim for bad faith, "a plaintiff carries the 'heavy burden' to prove that his insurer lacked any arguable basis for its decision." *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *6 (quoting *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010)). Stated differently, a plaintiff must "prove by clear and convincing evidence that the defendant 'acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.'" *Id.* (quoting Miss. Code Ann. § 11-1-65(a)).

The Mississippi Supreme Court has consistently explained that Mississippi's punitive damages statute—Miss. Code Ann. § 11-1-65(a)—also "encompass[es] the gross and reckless disregard for the insured's rights." *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *10 (citing *Thornhill v. Walker-Hill Env't & Zurich Am. Ins. Co. of Ill.*, 345 So. 3d 1197, 1205 (Miss. 2022) ("Additionally, in a bad faith claim against an insurer, one 'must show that the insurer lacked an arguable or

legitimate basis for denying the claim, or that the insurer committed a wilful [sic] or malicious wrong, or acted with gross and reckless disregard for the insured's rights.'" (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003)))).

Finally, the Mississippi Supreme Court has explained that "[t]he jury should be allowed to consider the issue of punitive damages if the trial judge determine[s] under the totality of the circumstances and in light of defendant's aggregate conduct, that a reasonable, hypothetical juror could have identified either malice or gross disregard to the rights of others." *T.C.B. Constr. Co. v. W. C. Fore Trucking, Inc.*, 134 So. 3d 701, 704 (Miss. 2013). But "[p]unitive damages are considered an 'extraordinary remedy' and should be awarded 'with caution and within narrow limits.'" *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *8 (quoting *Gonzalez v. Coastal Indus. Contractors, Inc.*, 316 So. 3d 612, 618 (Miss. 2021)). "[E]ven when punitive damages are not warranted, the insurer may be liable for extracontractual damages . . . includ[ing] awards for attorneys' fees." *Id.* at *10 (citing *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992)); *see also Coastal Hardware and Rental Co., LLC v. Certain Underwriters at Lloyds, London*, 120 So. 3d 1017, 1029 (Miss. Ct. App. 2013) (Explaining that "attorney's fees may be awarded to insureds as extra-contractual damages when there is no arguable basis to deny coverage, even though the circumstances do not warrant punitive damages").

B.    Analysis

1.    Plaintiff's Breach of Contract Claim is Barred by the Appraisal Award

The Court will first address State Farm's argument that Plaintiff's breach of

contract claim is barred by her agreement to—and acceptance of—the Appraisal

Award.  The appraisal provision of the Policy states:

> **Appraisal.**  If *you* and *we* fail to agree on the amount of loss, either
> party can demand that the amount of loss be set by appraisal.  Only *you*
> or *we* may demand appraisal.
>               *      *      *
> a. Each party will select a competent, disinterested appraiser and notify
> the other party of the appraiser's identity within 20 days of receipt of
> the written demand for appraisal.
>
> b. The appraisers will then attempt to set the amount of the loss of each
> item in dispute as specified by each party, and jointly submit to each
> party a written report of agreement signed by them.
>               *      *      *
> The written report of agreement will set the amount of the loss of each
> item in dispute and will be binding upon *you* and *us*.

Ex. [28-1] at 24.

Applying Texas law, the Fifth Circuit has held that "[a]lthough the

issuance of an appraisal award does not bar a breach of contract claim,

payment and acceptance of the award does." *Randel v. Travelers Lloyds of*

*Tex. Ins. Co.*, 9 F.4th 264, 267 (5th Cir. 2021).  And "[t]his rule applies even

when the appraisal award values the covered loss in an amount greater than

the insurer had initially assessed and even when the insurer initially denies

the insured's claim."  *Id.* at 268.  This is so, the Fifth Circuit has explained,

because after payment and acceptance of an appraisal award, "there is

nothing left to litigate once a plaintiff has received full damages on a claim."

12

*Id.* ("As the Randels have received every dollar they are owed for dwelling coverage, there is nothing left to litigate on this claim.").

The Mississippi Supreme Court has held similarly. In *Sweet Valley Missionary v. Alfa Insurance Corporation*,

> Sweet Valley alleged that Alfa had undervalued its claim and had breached the contract. So Alfa invoked the appraisal provision contained in the insurance contract, which led to the payment of $462.761.89 for Sweet Valley. After the parties had resolved the claim's value through this contractual [appraisal] process, Alfa filed a motion stating that the parties had resolved the dispute and that the trial court had nothing else to decide. We agree, and the trial court properly entered an order of dismissal in favor of Alfa.

192 So. 3d 990, 991 (Miss. 2016). Many other courts have arrived at similar conclusions, finding breach-of-contract claims barred by acceptance and payment of an appraisal award. *See Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 258 (5th Cir. 2017) ("Courts have thus repeatedly rejected breach of contract claims when an insurer timely paid an appraisal award.") (collecting cases); *J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, 769 F. App'x 698, 706 (11th Cir. 2019) ("[A]ny claim for breach of contract for failure to pay would not accrue until after there was an appraisal award that USIC refused to pay. . . . Only after USIC refused to pay the amount in the appraisal award would JPFD's breach of contract claim accrue."); *Patrick v. Liberty Mut. Grp., Inc.*, No. 7:21-cv-74, 2024 WL 4308435, at *3 (E.D. Ky. Sept. 26, 2024) ("[I]n compliance with the contract, Defendant actually paid the benefits due under the policy *in full.* . . . Simply put, where an insurance contract features an agreed tool to resolve disputed loss amount, invocation and use of that tool, assuming good faith and compliance with the tool's

13

result, is not a breach of the contract."); *Hoskins v. Kinsale Ins. Co.*, No. 3:20-cv-5909, 2023 WL 6442618, at *4 (N.D. Fla. Sept. 8, 2023) ("Defendant argues that this case should be dismissed because there is no remaining dispute between the parties or issues left for the Court to resolve following the conclusion and timely payment of appraisal. . . . The Court agrees." (internal quotations and citation omitted)).

The foregoing authority establishes that State Farm's payment—and Plaintiff's acceptance—of the agreed Appraisal Award bars Plaintiff's breach-of-contract claim. This is because, as the Fifth Circuit explained, "there is nothing left to litigate once a plaintiff has received full damages on a claim." *Randel*, 9 F.4th at 268. In her Amended Complaint [28], Plaintiff claims that "State Farm breached its contractual duty to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully deducting repair and replacement costs[,]" and "by failing and refusing to promptly pay the amounts individually owed to Plaintiff as required by the terms of the Policy." Am. Compl. [28] at 20. "As a result, Plaintiff has been damaged *in the amount of the unpaid portion of her claim*, including but not limited to the replacement cost of the damage to her dwelling." *Id.* (emphasis added).

During appraisal each party selected an independent appraiser to evaluate the costs associated with the damage to Plaintiff's home, and together these two appraisers certified that they agreed to a "value of all losses presented" of $329,616.98. *See* Ex. [54-1] at 1. And, according to those appraisers, that "appraisal award reflects the agreed damages and costs associated with the

damages." *Id.* State Farm filed a Notice [54] indicating that Plaintiff accepted an Appraisal Award check "for the difference in the amount of the appraisal award beyond the amounts [State Farm] previously paid her as replacement cost and actual cash value benefits." Not. [54] at 1. Thus, Plaintiff agreed to and accepted renumeration for the full value of her alleged damages, and her breach-of-contract claim should be dismissed. *See Int'l Ass. of Certified Home Inspectors v. Homesafe Inspection, Inc.*, 335 So. 3d 583, 593 (Miss. Ct. App. 2022) ("The purpose of breach-of-contract damages 'is to put the injured party in the position where she would have been but for the breach.'" (quoting *Maness v. K&A Enters. of Miss. LLC*, 250 So. 3d 402, 417 (Miss. 2018))).

Plaintiff's arguments to the contrary are unavailing. She first asserts that "State Farm's motion fails as Plaintiff also pled a claim for extracontractual damages . . . . [and] an appraisal award does not dispose of claims for extracontractual damages." Mem. [102] at 10-11. But whether she has stated a claim for extracontractual damages has no bearing on the sufficiency of her underlying breach-of-contract claim, and, in any event, the Court will address Plaintiff's extracontractual claims *infra*.

Next, Plaintiff contends that her "breach of contract claim has not been fully compensated and there remains [sic] additional policy benefits to which [she] is entitled to recover," *id.* at 11, presumably because "[t]he [Appraisal] [A]ward did not address the Plaintiff's Option ID coverage," *id.* But, as State Farm points out, Plaintiff's Option ID coverage is not mentioned anywhere in her Amended

Complaint [28], and "it is well settled that a plaintiff cannot amend her complaint through a responsive brief." *Carnahan v. Argon Med. Devices, Inc.*, No. 6:22-cv-080, 2022 WL 2392312, at *4 (E.D. Tex. July 1, 2022) (citing *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013)); *see also Bosarge*, 796 F.3d at 440 ("In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto." (quotations and citations omitted)). And even if it were proper for the Court to consider Plaintiff's claim about Option ID coverage, it would not succeed because she agreed to and accepted an Appraisal Award setting the "amount of loss" at $329,616.98. *See* Ex. [54-1] at 1. Under the clear terms of the Policy, the Appraisal's determination of the "amount of the loss" was binding on the parties, barring Plaintiff's claims for additional damages. *See* Ex. [28-1] at 24 ("The written report of agreement will set the amount of the loss of each item in dispute and will be binding on ***you*** and ***us***." (emphasis in original)).

Finally, Plaintiff maintains that "[t]he estimate underlying the appraisal award does not address the central question in this case: whether State Farm may permissibly apply new construction labor efficiency settings to reduce claims." Mem. [102] at 8. But even assuming that is the central question in this case, that question was resolved by Plaintiff's acceptance the Appraisal Award. The Court's Order [45] compelling appraisal stated that "[c]overage and causation are not at issue; only the labor efficiency is contested." Order [45] at 10. And the Appraisal— which, again, the Plaintiff agreed to—established the amount of loss by evaluating,

16

among other things, the cost of labor to repair Plaintiff's home.  *See* Ex. [54-1].

Finally, the Court notes that the agreed Appraisal was prepared using a "New

Construction" labor efficiency setting, the very same efficiency setting which

Plaintiff claims was improper.  *See* Ex. [54-1] at 2.  In the Court's view, this means

the Appraisal resolved, by way of the parties' agreement, any question of what labor

efficiency settings were appropriate in this case.  Plaintiff's claim for breach of

contract should be dismissed.

2.    <u>Plaintiff's Claims for Negligence and Gross Negligence Should be Dismissed</u>

The Court agrees with State Farm that Plaintiff's negligence and gross

negligence claims should be dismissed because they do not allege anything distinct

from her contractual claim.  The Court recognizes that under Mississippi law, in

certain circumstances a contractual breach may give rise to claims for both breach

of contract and negligence.  *See Fortner v. IMS Eng'rs, Inc.*, No. 2023-CA-01170-

COA, 2025 WL 1377575, at *10 (Miss. Ct. App. May 13, 2025) ("The breach of a

contract (whether described as 'negligent' or not) is not actionable in tort under an

ordinary negligence theory unless breaching the contract also breached a duty of

care recognized by tort law.  To be actionable, there must be a duty of care fixed by

law and independent of the contract." (quotations and citations omitted, cleaned

up)); *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015) ("Accompanying

every contract is a common law duty to perform with care, skill and reasonable

experience, and a negligent failure to observe any of these conditions is a tort as

well as a breach of contract." (quoting *Gilmore Co. v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991))).

But Courts in this District have also held that negligence claims entirely duplicative of contractual claims are subject to dismissal. *See Mixon v. Golden Rule Ins. Co.*, No. 2:12-cv-234, 2014 WL 232114, at *5 (S.D. Miss. Jan. 22, 2014) ("According to the Complaint, all of these claims—negligence, gross negligence, misrepresentation, detrimental reliance—arise from Defendant's failure to comply with the terms of the policy.  They are, therefore, duplicative and should be dismissed."); *GuideOne Elite Ins. Co. v. Mt. Carmel Ministries*, No. 2:23-cv-134, 2015 WL 72139, at *6 (S.D. Miss. Jan. 6, 2015) ("The relationship between an insurer and insured is contractual in nature[.]  Therefore, Seaway's negligence claims sound in contract, rather than tort . . . ." (cleaned up)), *aff'd*, 676 F. App'x 269 (5th Cir. 2017); *O'Hara v. Travelers*, No. 2:11-cv-208, 2012 WL 3062300, at *14 (S.D. Miss. July 26, 2012) ("As far as the Court can discern from Plaintiff's pleadings, his negligence claim arises from Defendant's alleged failure to pay benefits owed under the policy.  Accordingly, the 'negligence' claim sounds in contract, rather than tort.").

Plaintiff's claims for both negligence and breach of contract are based upon the same allegation—that State Farm improperly used the NC LES to adjust her claim, in violation of the Policy.  She alleges no independent or separate tortious behavior that would support a negligence claim.  For that reason, Plaintiff's

negligence and gross negligence claims are wholly duplicative of her claim for breach of contract and should be dismissed.

3.    <u>Plaintiff's Claim for Bad Faith Should be Dismissed</u>

Plaintiff also asserts that State Farm acted in bad faith, *see* Am. Compl. [28] at 21-24, but this claim must be dismissed because State Farm has advanced an arguable basis for its decision to use the NC LES in adjusting her claim.  As noted, "[t]o prevail on a bad faith claim, a plaintiff carries the 'heavy burden' to prove that his insurer lacked any arguable basis for its decision." *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *6 (quoting *Lisanby*, 47 So. 3d at 1178).  This requires proving "by clear and convincing evidence that the defendant 'acted with actual malice, gross negligence which evidences a wilful [sic], wanton or reckless disregard for the safety of others, or committed actual fraud.'" *Id.* (quoting Miss. Code Ann. § 11-1-65(a)).

State Farm had an arguable basis for its decision to use the NC LES—its determination that the damage to Plaintiff's property was so extensive that it qualified as a total loss.  *See* Mem. [93] at 5 ("Plaintiff does not allege that all of the RSR LES assumptions applied to her loss, nor could she, given the planned demolition taking her house down essentially to a shell."); *see also* Ex. [28-3] at 3 ("[The New Construction LES] is intended to be used for true new construction applications or for jobs in which a total 'ground-up' rebuild is necessary. *Additionally, it is possible that some portions of a large partial loss may be addressed using this efficiency setting*." (emphasis added)).  And Plaintiff herself

appears to concede that such a determination was, at the very least, arguably justified. *See* Am. Compl. [28] at 7 ("The January 21, 2023, fire resulted in extensive damage to Plaintiff's property. Plaintiff's home was practically destroyed in the loss."). This is insufficient to state a claim that the "insurer lacked any arguable basis for its decision." *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *6 (quoting *Lisanby*, 47 So. 3d at 1178). Plaintiff's bad faith claim should be dismissed.

4. <u>Plaintiff Lacks Standing to Pursue Her Equitable Claims</u>

Finally, Plaintiff's requests for declaratory and injunctive relief fail for lack of Article III standing. As the Fifth Circuit has explained:

> Requests for injunctive relief and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. . . . Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact.

*Stringer v. Whitley*, 942 F.3d 715, 720-21 (5th Cir. 2019) (quotations omitted); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 328 (5th Cir. 2024) ("Plaintiffs seek injunctive relief, so they must show a continuing injury or threatened future injury, not a past one." (quotations and citations omitted)). In this case, Plaintiff has not alleged a "continuing or threatened future injury," *Stringer*, 942 F.3d at 720, because she alleges only a past harm—that State Farm breached the Policy. She therefore lacks standing to pursue her requests for declaratory or injunctive relief.

III.  CONCLUSION

Young has agreed to and accepted an appraisal award, barring her claims for breach of contract and negligence.  And she has not alleged facts stating a plausible claim for bad faith.  Therefore, the Court finds that Defendant's Motion [92] for Judgment on the Pleadings should be granted, and Plaintiff's claims should be dismissed with prejudice.  To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [92] for Judgment on the Pleadings is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the claims of Plaintiff Gloria Celeste Young, individually and on behalf of all others similarly situated, against Defendant State Farm Fire and Casualty Company are **DISMISSED WITH PREJUDICE**.  The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 4th day of September, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE